# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs February 1, 2005

## STATE OF TENNESSEE v. JOHNNY ISSAC LAW

**Direct Appeal from the Circuit Court for Lincoln County**
**Nos. S0300118, S0300119, S0300070     Charles Lee, Judge**

---

**No. M2004-01031-CCA-R3-CD - Filed March 30, 2005**

---

The defendant pled guilty in the Lincoln County Circuit Court to eleven counts of forgery, eleven counts of transferring a forged instrument, sale of more than .5 grams of cocaine, delivery of more than .5 grams of cocaine, and aggravated perjury. The trial court merged the forgery convictions with the transferring a forged instrument convictions and sentenced the defendant as a Range I, standard offender to one year on each count, to be served concurrently. He was sentenced to ten years for the sale of cocaine conviction, which the trial court merged with the delivery conviction, to be served concurrently with the forgery sentence, and four years for the aggravated perjury conviction, to be served consecutively to the sale of cocaine sentence, for a total effective sentence of fourteen years. On appeal, he alleges the trial court erred in applying several enhancement factors in violation of the recent United States Supreme Court case, Blakely v. Washington, and in not sentencing him to the community corrections program. Following our review, we affirm the sentences but remand for entry of corrected judgments in all three cases to reflect the conviction offenses, which were omitted, and to reflect the correct offense date in Case No. S0300119.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed and Remanded for Entry of Corrected Judgments**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ROBERT W. WEDEMEYER, JJ., joined.

Merrilyn Feirman, Nashville, Tennessee (on appeal); Donna L. Hargrove, District Public Defender; and A. Jackson Dearing, III, Assistant Public Defender (at trial), for the appellant, Johnny Issac Law.

Paul G. Summers, Attorney General and Reporter; Michael Markham, Assistant Attorney General; William Michael McCown, District Attorney General; and Weakley E. Barnard, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS AND PROCEDURAL BACKGROUND**

The defendant, Johnny Issac Law, was indicted in Case No. S0300070 by the Lincoln County Grand Jury on July 22, 2003, on eleven counts of forgery and eleven counts of transferring a forged instrument. The forged instruments were checks drawn without permission on a checking account maintained by the defendant's grandparents at the First National Bank of Lincoln County. The defendant originally pled guilty on November 4, 2003, to six counts of transferring a forged instrument, a Class E felony, and the remaining counts were *nolle prosequied* by the State. However, on November 20, 2003, the State filed a motion to set aside the guilty pleas because "the Defendant misrepresented his criminal history in both the negotiated disposition and at the submission hearing giving both the State and the Court the false impression that he had no prior convictions."[1] Subsequently, the defendant was indicted on December 9, 2003, for aggravated perjury in Case No. S0300118 and for the sale and the delivery of more than .5 grams of cocaine, in connection with an undercover drug transaction that occurred on May 30, 2003, in Case No. S0300119.

On March 16, 2004, the defendant pled guilty to the offenses as charged in all three cases. The trial court merged the forgery convictions into the transferring a forged instrument convictions and sentenced the defendant to concurrent terms of one year for each count. For the aggravated perjury conviction, the trial court sentenced the defendant to four years, to be served concurrently with the forgery sentence. The trial court merged the delivery of cocaine conviction into the sale conviction and imposed a ten-year sentence, to be served consecutively to the aggravated perjury sentence, for an effective sentence of fourteen years.

**ANALYSIS**

The defendant challenges his sentences, arguing that the trial court improperly applied certain statutory enhancement factors in violation of Blakely v. Washington, 542 U.S. __, 123 S. Ct. 2531 (2004). According to the defendant, his sentences "must be appropriately reduced to reflect the absence of the impermissible enhancement factors." He also argues that the trial court erred in not sentencing him to community corrections.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached

---

[1]Although the record on appeal does not include a copy of an order setting aside the defendant's pleas of guilty, the parties have proceeded in this matter as if such an order exists, and we shall do likewise.

by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163, 166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancing factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210; State v. Scott, 735 S.W.2d 825, 829 (Tenn. Crim. App. 1987). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401, Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

The defendant was convicted of aggravated perjury, a Class D felony, and was sentenced as a Range I, standard offender. The sentence range for a Class D felony, as a Range I, standard offender is two to four years. Tenn. Code Ann. § 40-35-112(a)(4) (2003). Additionally, he was convicted of sale of more than .5 grams of cocaine, a Class B felony. The sentence for a Class B felony, as a Range I, standard offender is eight to twelve years. Tenn. Code Ann. § 40-35-112(a)(2) (2003). There is no mathematical formula for evaluating the enhancement factors to calculate the appropriate sentence. See generally State v. Boggs, 932 S.W.2d 467, 475 (Tenn. Crim. App. 1996). "Rather, the weight to be afforded an existing factor is left to the trial court's discretion so long as the court complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record." Id. at 475-76 (citations omitted).

Jerry Grohowski, a probation and parole officer with the Tennessee Department of Probation and Parole, testified at the sentencing hearing that he prepared the defendant's presentence report. He stated that the defendant had two charges for driving on a suspended driver's license in the Lincoln County General Sessions Court, which were both amended to driving without a license in his possession, and that a notice had been sent to the State on July 29, 2003, due to the defendant's failure to comply with the terms of his sentences. The defendant wrote in his response to the presentence investigation that his criminal activity was due to his "need to pay his child support;" however, he later told Grohowski that he was under no court obligation to pay child support. Grohowski also testified that the defendant pled guilty to speeding on June 21, 2001, and also pled guilty to driving without a license in his possession on September 13, 2000. On October 29, 1998, the defendant was convicted of passing a worthless check, and on July 27, 1998, he was "found guilty in absentia" of two counts of failure to use a safety belt or child restraint. The latter incident involved the defendant's daughter being ejected from a pick-up truck during an accident and taken to the hospital. The defendant also had a "seatbelt violation and a light bulb violation" in 1999. The defendant also reported to Grohowski that his alcohol use was sporadic, but when he did drink, he typically drank a "case of beer and a fifth of liquor." He told Grohowski that he first used marijuana

when he was sixteen and his last use had been two or three years ago. The defendant "described his usage as he smoked a joint when he took a notion." The defendant had worked "off and on" for four and a half years at Wells and Tate in Huntsville, Alabama.

Richard Tucker, a Fayetteville Police Department narcotics detective, testified that he had been in law enforcement for sixteen years and had worked exclusively in narcotics for the last eight. He stated that he had worked hundreds of cases in Lincoln County involving powder cocaine and that the sale and delivery of powder cocaine in the area was a growing problem.

The thirty-year-old defendant testified that prior to being incarcerated, he had lived with his brother, mother, and grandparents, both of whom were "real sick" and had been dependent on the defendant for help for eight to ten years. The defendant stated that he had a problem with powder cocaine in May and June 2003 when he forged his grandfather's name on several checks, though he characterized it as "not a real bad problem." The money he received from the forged checks was used to "pay [his] ex-wife child support and drugs." He testified that he drank alcohol every four or five months, and on those occasions, he would drink "a case of beer and a fifth of liquor," usually starting around 10:00 a.m. He stated that his current convictions and incarceration had taught him "not to do drugs no more and write checks. And to get out and get a job and pay my own bills and stuff."

On cross-examination, the defendant admitted he failed to tell Grohowski about his cocaine usage because "[i]t didn't come up, just about the marijuana is the only thing that come up." He bought cocaine from "James," a friend in Toney, Alabama, "[t]wo or three times a month," and the cocaine he sold the confidential informant in May 2003 was cocaine he had bought from James. The defendant also had an agreement with his ex-wife to pay her $50 every two weeks for child support, but he "missed a lot of times."

At the conclusion of the sentencing hearing, the trial court applied three enhancement factors to the sale of cocaine and forgery convictions: (2), the defendant has a previous history of criminal convictions or behavior in addition to those necessary to establish the range; (9), the defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release into the community; and (21), the defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult. See Tenn. Code Ann. § 40-35-114(2), (9), (21) (2003). In addition to those three factors, the court applied a fourth enhancement factor to the aggravated perjury conviction: (14)(A), the felony was committed while on any of the following forms of release status if such release is from a prior felony conviction: bail. Id. § 40-35-114(14)(A). Although the trial court determined that one mitigating factor applied to all but the sale of cocaine conviction, namely the defendant's conduct neither caused nor threatened serious bodily injury, see id. § 40-35-113(1), the court placed "little weight" on that mitigating factor. The trial court sentenced the defendant to four years, the maximum within the range, for the aggravated perjury conviction, and ten years, the midpoint in the range, for the sale of cocaine conviction. Pursuant to Rule 32(c)(3)(C) of the Tennessee Rules of Criminal Procedure, the sentences were ordered to be served consecutively, as the defendant was released on bail when he

committed the aggravated perjury. The trial court determined that "the Court easily in this case could max the Defendant out on all of the cases, and then just go back and add them together." The court stated, however, that it did "not feel that would be appropriate" and sentenced the defendant to one year, the minimum within the range, for each of the transferring a forged instrument convictions, to be served concurrently.

The Supreme Court in Blakely clarified its earlier holding in Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63 (2000), concluding that "[o]ur precedents make clear . . . that the 'statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." Blakely, 542 U.S. at __, 124 S. Ct. at 2537. Under the Apprendi/Blakely scheme, prior adult convictions may still be used to enhance a defendant's sentence. See State v. Robbie Chet Walley, No. W2003-02987-CCA-R3-CD, 2004 WL 2255255, at *4 (Tenn. Crim. App. Oct. 7, 2004). In the present case, the defendant has the following prior adult convictions: two counts of driving without a license in 2003; speeding in 2001; driving without a license in 2000; a seatbelt and light law violation in 1999; passing worthless checks and two counts of failure to use safety belt/child restraint in 1998.[2] Although enhancement factors (9), (14), and (21) may not have been applicable in this matter because of Blakely, we deem application of factor (2) to be sufficient alone to justify the sentences imposed by the trial court. Accordingly, the Blakely decision does not affect the defendant's sentencing, which, we conclude, is supported by the record.

The defendant also argues he should have been sentenced to the Community Corrections Program, as he met all of the criteria set forth in Tennessee Code Annotated section 40-36-106(a). The State responds that the trial court properly denied alternative sentencing based on the defendant's "lack of candor."

The defendant, having been convicted of a Class B felony, is not presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6) (2003). Additionally, because of the length of his sentence, the defendant is not eligible for probation. See Tenn. Code Ann. § 40-35-303(a) (2003). However, the defendant can still be considered eligible for community corrections if he satisfies the minimum eligibility criteria set forth in Tennessee Code Annotated section 40-36-106(a)(1). See State v. Grigsby, 957 S.W.2d 541, 546 (Tenn. Crim. App. 1997) ("The Community Corrections Act permits trial courts to be creative in sentencing certain *nonviolent* felony offenders, who are either not eligible for probation or not good candidates for probation, to participate in community-based alternatives to incarceration."). Those criteria are as follows:

(A) Persons who, without this option, would be incarcerated in a correctional institution;

---

[2]There are two presentence reports in the record, dated November 12, 2003, and April 5, 2004. In the November report, the prior criminal record portion indicates that the defendant was charged with aggravated assault, which occurred on May 25, 2003, and which was amended to a conviction offense of simple assault on August 11, 2003. This conviction is not reflected in the April report. The record contains no explanation for this disparity.

(B) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

(C) Persons who are convicted of nonviolent felony offenses;

(D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

(E) Persons who do not demonstrate a present or past pattern of behavior indicating violence;

(F) Persons who do not demonstrate a pattern of committing violent offenses.

Tenn. Code Ann. § 40-36-106(a)(1).

We agree that the defendant meets the minimum criteria of the Community Corrections Act. See Tenn. Code Ann. § 40-36-106(d) ("The eligibility criteria established in this section shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter."). Even though an offender meets these minimum eligibility requirements for community corrections, an offender is not automatically entitled to serve his sentence in the program. See State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999) (stating that "the defendant is not necessarily entitled to be sentenced under the Act as a matter of law or right" even when he meets the minimum requirements) (citing State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); State v. Grandberry, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990). In the present case, the trial court stated that the defendant's conduct in lying to the court concerning his prior criminal convictions "strikes at the very heart of the criminal justice system." We have previously held that a defendant's lack of candor is a proper consideration in the trial court's determination of whether a defendant should receive an alternative sentence. See State v. Thomas Jared Richardson, No. M2000-01976-CCA-R3-CD, 2001 WL 501420, at *4 (Tenn. Crim. App. May 11, 2001) (stating that a defendant's "lack of candor or untruthful testimony reflects poorly upon the defendant's potential for rehabilitation" and thus may be a proper basis for the denial of alternative sentencing); see also Tenn. Code Ann. § 40-35-103(5). At the original plea submission hearing held on November 4, 2003, when asked by the court if he had "ever been convicted of anything before," the defendant responded, "No, sir." That response was the basis for the original plea agreement being set aside, as well as the defendant's conviction for aggravated perjury. The presentence report, as well as the testimony of Jerry Grohowski, established a history of prior criminal convictions, contradicting the defendant's earlier response under oath to the court. Therefore, we conclude that the defendant was appropriately denied alternative sentencing.

## CONCLUSION

We conclude that the defendant was appropriately sentenced both as to length of sentence and manner of service. The judgments of the trial court are affirmed. However, we remand for entry of corrected judgments in all three cases to reflect the defendant's conviction offenses, which were omitted, and to reflect the correct offense date in Case No. S0300119.

_____
ALAN E. GLENN, JUDGE